**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION**

|  |  |  |
|---|---|---|
| **GABRIEL P. DIAZ,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 6:06-CV-024-C |
| | § | ECF |
| | § | Referred to the U.S. Magistrate Judge |
| **MICHAEL J. ASTRUE**[1]**,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

**THIS MATTER** is before the court upon Plaintiff's complaint filed March 3, 2006, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on July 6, 2006, and Defendant filed her brief on August 4, 2006. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

---

[1] Michael J. Astrue has been appointed as the new Commissioner of Social Security, replacing Jo Anne B. Barnhart, effective February 12, 2007, per FED. R. CIV. P. 25(d)(1).

## I. STATEMENT OF THE CASE

Plaintiff filed applications for supplemental security income benefits on November 7, 2003, and for a period of disability and disability insurance benefits on November 10, 2003. Tr. 14; 342-43, 354-56. Plaintiff's applications were denied initially and upon reconsideration. Tr. 14, 27-33, 36-40, 367-71. Plaintiff filed a Request for Hearing by Administrative Law Judge on April 1, 2004, and this matter came for hearing before the Administrative Law Judge ("ALJ") on May 24, 2005. Tr. 41-44, 376-400. Plaintiff, represented by an attorney, testified in his own behalf. Tr. 379-86, 389-93, 396-97. John Simonds, a medical expert ("ME") and Carol Bennett, a vocational expert ("VE"), appeared and testified as well. Tr. 386-89, 393-99. The ALJ issued a decision unfavorable to Plaintiff on July 29, 2005.   Tr. 11-22.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: With regard to his claim for a period of disability and disability insurance benefits, Plaintiff was insured through the date of the ALJ's decision. Tr. 15. Plaintiff has "severe" impairments, including a back disorder and arthritis. Tr. 15, 20. Plaintiff's anxiety and depression were not "severe" impairments, citing *Bowen v. Yuckert,* 482 U.S. 137 (1987); *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985); and Social Security Ruling 96-3p (July 2, 1996)("SSR 96-3p"). Tr. 15, 18. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 15, 20.   Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy. Tr. 16.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social

Security Ruling 96-7p. *Id*. The ALJ noted that the evidence of record indicated that Plaintiff had a work-related back injury, in which he sustained a ruptured lumbar disk. *Id*. He noted that Plaintiff was admitted to the emergency room for severe back pain in December 2002 and was diagnosed with a large herniated L5-L6 disc. *Id*. Plaintiff was noted to have progressive neurological deficit and progressive weakness of the right leg and reported that he had been falling at home. *Id*. Plaintiff underwent chiropractic manipulation in 2002 and 2003 and underwent lumbar surgery in December 2002. *Id*. The ALJ noted that Dr. Quiros Torres gave Plaintiff a 10% whole person disability rating, and Debbie Crawford, D.O. gave him a 5% rating, in connection with Plaintiff's worker's compensation evaluation. *Id*. The ALJ noted that Plaintiff was treated by Dr. Luis E. Duarte from February through December 2004. *Id*. The ALJ noted Dr. Duarte's impression of post laminectomy lumbar syndrome with pseudoarthrosis. Tr. 16-17. He also noted that a CT scan revealed postoperative changes at the L4-5 disc space level and mild bulging of the dist at L3-4 and L5-S1. Tr. 17.

The ALJ noted Dr. Duarte's opinion that Plaintiff was not able to work. Tr. 17. He indicated that he had not given Dr. Duarte's assessment significant weight, even though Dr. Duarte was a treating physician, because his opinion was inconsistent, insofar as Dr. Duarte also opined that Plaintiff would be able to occasionally lift and carry up to 20 pounds and could occasionally sit, stand, walk, kneel, crawl, and climb. *Id*. The ALJ noted that in December 2004 Dr. Duarte opined that Plaintiff could lift and carry 10 pounds occasionally, walk two blocks without rest or pain, sit for 45 minutes at a time, stand 20 minutes at a time, and could only sit, stand, and walk for less than two hours during an 8-hour work day. Tr. 17-18.

The ALJ also noted Plaintiff's testimony of being unable to lift a lot, run, or walk far, and his ability to read, do a little housework, being able to lift and carry up to 20 pounds, and walking ½ mile in 20 minutes. Tr. 17.

The ALJ discussed the testimony of Dr. Simonds, the ME, who opined that Plaintiff could perform sedentary or light work, depending on his subjective complaints. *Id.* The ALJ also noted that the state agency medical consultants ("SAMCs") had opined that Plaintiff was able to perform light work activity. Tr. 18.

The ALJ found that Plaintiff's testimony was partially credible, noting Plaintiff's testimony of only using over-the-counter medications for his pain, being able to sit for 45 minutes at a time, walking ½ mile in 20 minutes, and being able to lift up to 20 pounds. Tr. 17. The ALJ therefore did not accept the opinions of the SAMCs and instead found that Plaintiff retained the physical RFC to perform sedentary level work activity, as limited by the need for jobs not requiring him to stoop, balance, crouch, crawl, kneel, or climb stairs and ramps more than occasionally; not requiring him to climb scaffolds, ladders, and ropes; not requiring him to sit for more than 20 minutes at a time without the opportunity to stand in addition to a lunch and the normal legal breaks during the work day; not requiring him to walk more than 10 minutes at one time without the opportunity to sit; not requiring him to stand more than 10 minutes without the opportunity to sit; not requiring him to push or pull with the feet; and not requiring him to work at unguarded heights or near unguarded hazardous mechanical equipment. Tr. 18, 20-21. The ALJ found that Plaintiff retained this RFC to perform such work on a sustained basis. Tr. 18, 21.

The ALJ found that Plaintiff could not return to his past relevant work as a line operator, factory lead man, machine tender, presser, caster, delivery driver, or carpet layer, noting that the VE testified that such jobs were performed at the medium to heavy exertional level. Tr. 18-19, 21. He noted that Plaintiff was considered a "younger individual" with a limited eleventh grade education and an unskilled work background, citing 20 C.F.R. §§ 404.1563, 416.963, and the VE testimony. Tr. 19-21.

Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 19-20. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of assembler, with 100,000 jobs in the national economy; and inspector, with 40,000 jobs nationally. Tr. 20-21. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. *Id.*

Plaintiff submitted a Request for Review of Hearing Decision/Order on August 11, 2005. Tr. 10. The Appeals Council issued its opinion on January 25, 2006, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 6-9. The ALJ's decision, therefore, became the final decision of the Commissioner.

On March 3, 2006, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court

will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452. *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 20-21.

### III.  DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to give appropriate weight to the opinion of Dr. Duarte, his treating physician, and failed to analyze the factors set forth in *Newton v. Apfel*, 209 F.3d. 448 (5th Cir. 2000) and 20 C.F.R. § 404.1527(d)(2) before declining to give any weight to the opinion of the treating physician.

**A.  Whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.**

Plaintiff argues that the ALJ's decision and the RFC determination is not supported by substantial evidence because the ALJ failed to appropriately weigh the opinion of his treating

physician. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

In his opinion the ALJ indicated that he had not given controlling weight to Dr. Duarte's opinion that Plaintiff is unable work at all because Dr. Duarte's opinion was internally inconsistent and was also inconsistent with other evidence in the record, including other medical evidence of record and Plaintiff's own testimony.

Plaintiff argues that the ALJ erred by failing to appropriately justify his failure to give appropriate weight to the opinions of his treating physician and further erred by failing to discuss each of the factors set forth in 20 C.F.R. § 404.1527(d) before declining to give any weight to the treating specialist's opinion.

However, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*,

326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)).  Insofar as Dr. Duarte opined that Plaintiff was "disabled" or unable to work, the ALJ was not required to give these opinions any particular significance.  The ALJ did not err by failing to accord "controlling weight" or any special weight to Dr. Duarte's opinion that Plaintiff should not work.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion.  20 C.F.R. § 404.1527(d).  The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist."  *Newton,* 209 F.3d at 456.  Thus, the ALJ is required to consider the six factors if he declines to give the opinion of a treating specialist any weight.  Pursuant to Soc. Sec. Ruling 96-2p(July 2, 1996)("SSR 96-2p"), and  20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions"are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled.  *Frank*, 326 F.3d at 620.  Therefore, the ALJ did not err by failing to discuss the *Newton* factors in rejecting Dr. Duarte's opinion that Plaintiff was unable to work.

As noted above, the ALJ is permitted to "discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."  *Newton*, 209 F.3d 456.  SSR 96-2p provides that a medical source statement from a treating source which is well-supported by medically acceptable evidence and which is not inconsistent with other substantial evidence in the record is entitled to controlling weight. This ruling further explains:

-8-

> If any of the above factors is not satisfied, a treating source's opinion cannot be entitled to controlling weight. It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.

SSR 96-2p. The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982)).

Dr. Duarte completed a questionnaire on December 20, 2004, regarding his opinion as to Plaintiff's physical RFC. Tr. 326-29. In this questionnaire Dr. Duarte indicated that Plaintiff could walk 2 blocks, sit for 45 minutes at a time, stand for 20 minutes at a time, and could sit and stand/walk for less than two hours during an 8-hour work day. Tr. 328. Dr. Duarte indicated that Plaintiff needed to shift positions every 20 minutes. *Id*. He indicated that Plaintiff should also walk around every 10 minutes during an 8-hour work day, for a period of five minutes each time. *Id*. Dr. Duarte indicated that Plaintiff could occasionally lift 10 pounds, could rarely lift 20 pounds, and should never lift 50 pounds. *Id*. He also indicated that Plaintiff should never twist, stoop, or climb ladders and should rarely crouch or climb stairs. Tr. 329. Dr. Duarte also indicated that Plaintiff would miss more than four days per month of work, his experience of pain would constantly be severe enough to interfere with attention and concentration, and Plaintiff was incapable of even "low stress" jobs. Tr. 327-29.

On February 12, 2004, Dr. Duarte performed a lumbar puncture and myelogram, which indicated postoperative change secondary to laminectomy with anterior fusion at the L4-5 disk space level. Tr. 341. A CT scan indicated minimal bulging of the disk at the L3-4 level, postoperative changes secondary to bilateral laminectomies at L4-5, and mild central bulging of the disk at the L5-S1 level. Tr. 340. Upon examination, he noted no clear-cut weakness in the upper or lower

extremities and a positive straight leg raise on the right side. Tr. 335. His impression was post laminectomy lumbar syndrome with pseudoarthrosis and nerve root compression with epidural scar tissue. *Id*. He opined that Plaintiff needed to have a lumbar laminectomy and fusion with pedicle screws. *Id*. Dr. Duarte again opined that Plaintiff needed surgery on March 16, 2004. Tr. 333. A progress note dated September 28, 2004, indicates Plaintiff's report of pain especially when standing, walking, or bending. Tr. 332. Plaintiff had stopped smoking, and Dr. Duarte indicated that he was a good candidate for surgery. Tr. 331.

A functional capacity evaluation was performed on October 12, 2004. Tr. 322-23. It was noted that Plaintiff was able to lift ten pounds from the floor to his waist, although he reported increased pain during periods of trunk flexion. Tr. 322. Plaintiff was also noted to be unable to kneel or squat. *Id*. The physical therapist who performed the evaluation opined that Plaintiff was not able to work in his current state but "should have additional vocations options after his malunion [in his back] is corrected." Tr. 323. The therapist indicated that Plaintiff should continue to walk at least three times per week for 30 minutes to maintain his current level of functioning. *Id*.

Plaintiff was treated by Dr. Torres for his back impairments. On September 23, 2002, Dr. Torres noted that Plaintiff had difficulty heel- and toe-walking on the right, as compared to the left side, was walking with a limp on the right side, and upon examination, his back dynamics were very limited on forward bending as well as on hyperextension. Tr. 233. Dr. Torres noted that Plaintiff's x-rays indicated a narrowing of the L5-S1 disc interspace. Tr. 234. Plaintiff underwent an MRI which indicated a large disc herniation posteriorly at the L5-6 level with moderate to marked spinal stenosis with compression of the thecal sac, as well as posterior osteophytes with posterior bulging anulus L1-2 disc space with mild narrowing of the anteroposterior diameter of the spinal canal. Tr. 231. Dr. Torres indicated that Plaintiff opted to go ahead with posterior lumbar interbody fusion using a BAK threaded case device. Tr. 230. Prior to the surgery, Plaintiff reported a great deal of

pain and the inability to walk and put weight on his right leg. *Id*. Post-operatively, Dr. Torres noted that Plaintiff had been ambulating, and his strength in the left arm was much improved. Tr. 228. Dr. Torres advised Plaintiff to increase his activity as far as walking distance. *Id*. No significant sciatica was noted. *Id*. Dr. Torres opined on February 19, 2003, that Plaintiff was stable and healing well and advised him to continue to increase his activity. Tr. 227. On May 6, 2003, Dr. Torres performed an impairment rating evaluation. Tr. 223-24. He noted that Plaintiff was advised to gradually increase his activity and to continue walking exercises. Tr. 223. He noted that Plaintiff remains stable and walked with a steady gait, although he limps on the right leg. Tr. 224. Dr. Torres opined that the weakness down the right leg was markedly improved, there was no gross weakness of the extremities, and straight leg raising on both sides is much improved. *Id*. He opined that Plaintiff had already reached maximum medical improvement and gave Plaintiff a 10% whole person impairment rating. *Id.*

Dr. Crawford completed a designated doctor exam on December 10, 2003. Tr. 274-275. She noted that upon physical examination, Plaintiff was able to walk in an upright position with a very slight limp to the right leg. Tr. 274. She noted that Plaintiff had a positive straight leg raise on the right at 80 degrees and residual tenderness of the right SI joint. *Id*. She also noted that Plaintiff's range of motion of the lumbar spine was abnormal, especially on extension. *Id.* Dr. Crawford noted Plaintiff's report of pain with motion of the lumbar spine. Tr. 275. She opined that based on the lack of evidence of radiculopathy, as well as Plaintiff's failure to appear for a nerve conduction study appointment, Plaintiff has whole person impairment rating of 5%, with September 27, 2003, as the date of maximum medical improvement. Tr. 275.

Plaintiff underwent chiropractic care on May 5, 2003, and reported pain, the inability to move much, and the inability to lift and hold light objects. Tr. 168. Plaintiff also underwent chiropractic care on April 15, 2003, where it was noted that he had diminished lumbar range of

motion and reported that pain increased after sitting, walking, arising from a sitting position, getting in/out of bed, driving, and lifting any object from the floor. Tr. 171.

Plaintiff testified that: He can't really lift a lot, run, walk around a lot because of the cage in his back. Tr. 382-83. He had not had the second surgery yet. Tr. 383. He lives with his parents and child, reads, watches television, and tries to help with the housework. Tr. 384. He has a license but does not have a car or vehicle. *Id*. He has a real problem with bending. *Id*. He can sit for 45 minutes. Tr. 391. He can walk half a mile in 20 minutes. Tr. 392. He can lift about 20 pounds. Tr. 393.

In his opinion the ALJ found that Plaintiff retained the RFC to perform a limited range of sedentary level work. He incorporated limitations on sitting no more than 20 minutes at a time and standing no more than 10 minutes at a time without the opportunity to change position and not requiring Plaintiff to walk more than 10 minutes at a time without the opportunity to sit. Tr. 18. This is consistent with the questionnaire completed by Dr. Duarte, which indicated that Plaintiff could stand for 20 minutes at a time, and is more limited than Plaintiff's own testimony and the questionnaire, which indicated that Plaintiff could sit for 45 minutes at a time. Tr. 327, 391. This is also consistent with Dr. Duarte's questionnaire, insofar as it indicated that Plaintiff could walk two blocks, and Plaintiff's testimony that he could walk about half a mile in 20 minutes. *Id*. The ALJ also incorporated a limitation to jobs not requiring Plaintiff to stoop, balance, crouch, crawl, kneel, or climb stairs or ramps more than occasionally; not requiring Plaintiff to climb scaffolds, ladders, and ropes; and not requiring Plaintiff to work at unguarded heights or near unguarded hazardous mechanical equipment. Tr. 18. This is consistent with the questionnaire which indicated that Plaintiff should rarely crouch and should never climb ladders. Tr. 329.

The ALJ did not accept certain limitations indicated by Dr. Duarte – limitations on repetitive reaching, handling, or fingering, an indication that Plaintiff would miss more than four days of work

per month, an indication that Plaintiff would need to take a break every 20 minutes and that such breaks would last for 45 minutes, an indication that Plaintiff should elevate his legs, the opinion that Plaintiff was incapable of even "low stress" jobs, and the indication that Plaintiff could sit and stand/walk for no more than 2 hours total during an 8-hour work day. Tr. 327-29. These limitations are not reflected in Dr. Duarte's progress notes. While Plaintiff indicated that he was unable to sit, stand, or walk for long periods of time, the ALJ incorporated limitations on doing any of these actions for periods of time consistent with Plaintiff's testimony. While Plaintiff indicated that he can barely lift or carry his child, he also testified that he can lift up to 20 pounds, and the ALJ limited him to sedentary level work. Tr. 18. The regulations provide that:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR § 404.1567(a). Therefore, the lifting restrictions noted by Plaintiff in his testimony are consistent with the RFC finding.

While the ALJ did not accept all of the limitations noted by Dr. Duarte, he incorporated those limitations most supported by the record into his RFC finding. These limitations are also consistent with much of Plaintiff's testimony and his description of his own limitations and activities. The ALJ rejected portions of Dr. Duarte's opinion, noting that certain limitations were not consistent with portions of Dr. Duarte's opinion and were not supported by his own progress notes or other evidence in the record. "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520,

523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790.

Plaintiff argues that the ALJ "only took portions of Dr. Durante's [sic] opinion and ignored other portions." Plaintiff argues that in doing so, the ALJ inappropriately picked and chose only the evidence which supported his position.

"[I]t is clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza,* 219 F.3d at 393.

Plaintiff is correct in asserting that the ALJ accepted only certain parts of the limitations noted by Dr. Duarte. As the ALJ noted in his opinion, he had not give Dr. Duarte's assessment "full weight," given its internal inconsistency and the lack of support for such opinion in the medical record. Tr. 17-18. The ALJ correctly noted that an ALJ may give less weight to the opinion of a treating physician if there is good cause shown. I find that the ALJ demonstrated good cause for accepting only portions of Dr. Duarte's opinion. In any event, the ALJ stated in his decision that he gave careful consideration to all of the record evidence as required and specifically addressed those portions of Dr. Duarte's opinion that he did not accept, thereby satisfying *Loza*. Tr. 18; *Loza*, 219 F.3d at 393. I find that the ALJ did not "pick and choose" only the evidence which supported his position but instead appropriately exercised his responsibility as factfinder and incorporated those limitations most supported by the record into his RFC assessment. I further find that the ALJ did not err by failing to give controlling weight to Dr. Duarte's opinion that Plaintiff was disabled. I also find that the ALJ was not required to discuss each of the factors set forth in *Newton* and 20 C.F.R. 04.1527(d)(2) because he did not decline to give any weight to the opinion of the treating physician, nor did he choose the opinions of nonexamining sources over that of the treating

physician in making his RFC assessment. The ALJ's opinion, including his RFC assessment, is supported by substantial evidence in the record.

## IV.     CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4(a) of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

-16-

DATED this 9th day of April, 2007.

_____
**PHILIP R. LANE
UNITED   STATES   MAGISTRATE   JUDGE**